IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ANTONIO LAMONT WEBB <br><br>　　　　　　　Plaintiff, <br><br>　　vs. <br><br>SHERIE KORNEMAN, et al. <br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 5:18-cv-06061-CV-W-DGK<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF ANTONIO LAMONT WEBB'S**
**FOURTH AMENDED COMPLAINT**

Plaintiff Antonio Lamont Webb ("Mr. Webb"), by and through counsel, and for his Complaint at Law against Defendants Lori Lakey, Andrew Webb, Betty Lindsey, Latisha Montemayor, Elizabeth Jordan, David Gilgour, Katrina Woody, and John DeWeese (collectively "Defendants"), in their individual capacities, allege and state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Mr. Webb is a citizen of Missouri. At all relevant times herein, Mr. Webb was an inmate at the Western Missouri Correctional Center ("WMCC").

2. Defendant Lori Lakey is a citizen of Oklahoma, and at all times relevant to this action was the Deputy Warden of the WMCC.

3. Defendant Andrew Webb is a citizen of Missouri, and at all times relevant to this action was a Functional Unit Manager for Housing Unit 7 at the WMCC.

4. Defendant Betty Lindsey is a citizen of Missouri, and at all times relevant to this action was a case manager and grievance officer at the WMCC.

5. Defendant Latisha Montemayor is a citizen of Missouri, and at all times relevant to this action was a case manager at the WMCC.

6. Defendant Elizabeth Jordan is a citizen of Missouri, and at all times relevant to this action was a corrections officer at the WMCC.

7. Defendant David Gilgour is a citizen of Missouri, and at all times relevant to this action was a case manager and grievance officer at the WMCC.

8. Defendant Katrina Woody is a citizen of Missouri, and at all times relevant to this action was a case manager and grievance officer at the WMCC.

9. Defendant John DeWeese is a citizen of Missouri, and at all times relevant to this action was a case manager and grievance officer at the WMCC.

10. Mr. Webb claims that during his stay at the WMCC the defendants have continuously violated his constitutional rights under 42 U.S.C. § 1983. Consequently, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Pursuant to 28 U.S.C. § 1391, venue of this action properly lies in the United States District Court for the Western District of Missouri, Western Division, because Defendants reside in the judicial district and a substantial part of the events or omissions giving rise to Mr. Webb's claim occurred within the district.

## ALLEGATIONS COMMON TO ALL COUNTS

12. Mr. Webb hereby incorporates all allegations from paragraphs 1 through 11 and re-allege the same as if fully set forth herein.

13. Mr. Webb has exhausted all available and required administrative remedies and the claims set forth herein are ripe for adjudication.

14. Between December of 2016 and March of 2018, Defendants John DeWeese, David Gilgour, and Katrina Woody sexually harassed and/or abused Mr. Webb on numerous separate occasions.

15. Specifically, on or about August 22, 2017, Defendant John DeWeese made unwanted sexual comments to Mr. Webb during his medication round. Despite Mr. Webb's request that Defendant DeWeese stop his inappropriate sexual comments because he was making Mr. Webb uncomfortable, Defendant DeWeese refused to stop. Defendant DeWeese continued to make intimidating comments and gestures, including unwanted sexual gestures and sounds toward Mr. Webb, while working in Mr. Webb's housing unit from September 2017 through February 2018.

16. On February 21, 2017, Defendant Gilgour intentionally entered Mr. Webb's cell while he was naked to watch him. On March 23, 2017, Defendant Gilgour groped Mr. Webb's chest, buttocks, and inner thighs during a pat search. Defendant Gilgour taunted Mr. Webb saying, "You gonna call PREA on me again? You gonna call PREA?" On February 13, 2018, Defendant Gilgour watched Mr. Webb through his cell window as he was naked and preparing to shower, and commented, "Looks like a good time. Let's make it a party," and laughed. Mr. Webb expressed to Defendant Gilgour his actions were inappropriate and made him uncomfortable, but Defendant refused to stop and instead continued his inappropriate comments and voyeurism of Mr. Webb.

17. On February 21, 2017, Defendant Woody intentionally entered Mr. Webb's cell while he was naked to watch him. On March 5, 2017, Defendant Woody inappropriately touched Mr. Webb during a search, including groping and fondling Mr. Webb's genitals and buttocks. On April 17, 2017, Mr. Webb was urinating in his cell when Defendant Woody showed up

unannounced, stared at Mr. Webb, and made unwarranted comments about his penis. Mr. Webb expressed to Defendant Woody her actions were inappropriate and made him uncomfortable, but Defendant refused to stop and instead continued her inappropriate comments and touching of Mr. Webb.

18. Throughout these incidents, Mr. Webb reported these Defendants to other officers of the WMCC, including, but not limited to, Defendants Webb, Montemayor, Jordan, Lakey, and Lindsey. Mr. Webb did so by directly complaining to these Defendants, filing formal grievances against Defendants Woody, Gilgour, and DeWeese, and reporting these sexual violation to the Prison Rape Elimination Act ("PREA") Hotline.

19. Despite being aware of these violations, Defendants Webb, Montemayor, Jordan, Lakey, and Lindsey took no action to ensure the protection of Mr. Webb from further violations from these Defendants. Defendants refused to implement the necessary protections required in order to prevent retaliation because of reporting of sexual harassment and abuse. This failure left Mr. Webb open for additional abuses from Defendants Gilgour, Woody, and DeWeese.

20. Instead, Defendant Webb merely requested that inmates place an indicator in their cell windows to alert officers they were indecent so that the officer would not enter the inmates' cell as discussed above, however, this did not prevent further violations.

21. On February 21, 2017, despite an indicator on his cell window, Defendants Gilgour and Woody intentionally entered Mr. Webb's cell while he was naked to harass him.

22. After Mr. Webb informed Defendants Gilgour and Woody about Defendant Webb's instructions on using indicators, Defendants Gilgour and Woody responded by threatening Mr. Webb.

23. Defendant Gilgour told Mr. Webb he "should stop going back to the office with this [expletive] or we are going to trash your cell!" and "If I hear anymore about this I'm going to write you so many violations you'll go to level five!"

24. Defendant Woody threatened, "I'm sure we'll find something of yours broken, or torn, to write you up for when we do. You know accidents happen during searches."

25. Mr. Webb reported Defendants Gilgour and Woody's threats and was summoned to speak with Defendant Jordan. Defendant Jordan, refused to take any statement, told Mr. Webb he was "making a big deal out of nothing," and merely promised to talk with Defendants Gilgour and Woody.

26. Because of the Defendants' inaction, Mr. Webb filed numerous grievances against the aforementioned Defendants.

27. Defendants Webb, Montemayor, Lakey, and Lindsey were responsible for receiving, reviewing, or processing Mr. Webb's grievances and refused to act upon Mr. Webb's grievances. Instead, these Defendants proceeded to cover up these violations of Mr. Webb's constitutional rights

28. Specifically, Defendants Webb and Montemayor refused to categorize Mr. Webb's complaints as sexual abuse or under PREA. Instead, Defendants categorized the complaint as "other." Further, Defendants Webb and Montemayor refused to complete the required risk assessment, retaliation monitoring, protective separation from violators, or offer mental health services to Mr. Webb.

29. Defendants Lakey and Webb summoned Mr. Webb to meet with them about Mr. Webb's PREA complaints and grievances. Defendants Lakey and Webb took Mr. Webb to a

holding cell away from the general population for this meeting. The holding cell, unlike Housing Unit 7 and the general population areas of the WMCC, did not have any security cameras.

30. During the meeting, Defendant Lakey tried to coerce Mr. Webb into dropping all filed complaints of sexual abuse and retaliation. Defendant Lakey used Mr. Webb's upcoming parole hearing to threaten him into dropping his complaints. Specifically, she asked Mr. Webb about his upcoming March parole hearing and told Mr. Webb that he does not want to be here longer than he has to be because of the grievances he was filing.

31. While Defendants Montemayor, Lakey, Webb, and others were refusing to take any actions, Defendants Gilgour, Woody, and Jordan continued to sexually harass Mr. Webb and retaliate against Mr. Webb for filing grievances against them and for reporting the aforementioned misconducts. Specifically, on March 5, 2017, without any reasons to do so, Defendant Jordan directed Defendant Woody to pat search Mr. Webb. During this unwarranted search, Defendant Woody roughly groped and fondled Mr. Webb's genitals while Defendant Jordan threatened to get Mr. Webb in trouble if he did not "keep my name out of your mouth."

32. On March 21, 2017, Defendant Gilgour created a false conduct violation for insulting behavior against Mr. Webb because Mr. Webb reported Defendant Gilgour's sexual abuse and sexual harassment.

33. The instances of sexual abuse and sexual harassment that Mr. Webb endured should have been captured by the WMCC's video surveillance system.

34. Mr. Webb repeatedly requested that Defendant Andrew Webb and the other Defendants preserve the surveillance videos showing Defendants' sexual abuse and harassment.

35. Not only did the Defendants refuse to preserve the videos, which would conclusively prove Mr. Webb's claims, but Defendants failed to review the videos during their purported investigations into Mr. Webb's complaints.

### COUNT 1 – VIOLATION OF 42 U.S.C. § 1983:
### CRUEL AND UNUSUAL PUNISHMENT – SEXUAL HARASSMENT AND ABUSE
### (Defendants Gilgour, Woody, and DeWeese)

36. Mr. Webb hereby incorporates by reference allegations of Paragraphs 1 through 35 above as if set forth fully herein.

37. At all relevant times, Mr. Webb was incarcerated at the WMCC, a prison operated by the MDOC. At all relevant times, Mr. Webb was under the direct supervision and control of Defendants, employees of the MDOC.

38. Defendants Gilgour, Woody, and DeWeese, sexually abused and/or sexually harassed Mr. Webb, which included, but was not limited to the following acts:

   a. inappropriately harassing and spying on Mr. Webb through his cell window while he was naked and preparing to shower;

   b. Making sexually suggestive comments to Mr. Webb while he was naked in his cell;

   c. Opening Mr. Webb's cell door while he was urinating, defecating, and getting dressed after showering and exposing himself with an indicator in the window;

   d. Groping Mr. Webb's genitals, buttocks, and chest during pat searches;

   e. Fondling his genitals during a pat search;

   Forcing Mr. Webb to imitate sexually suggestive behaviors with his mouth in order to receive his medications; specifically ordering Mr. Webb to open his mouth "wide," "open it wider for me," and "open it real wide so I can see real good in

there" and forcing Webb to perform a sexual kissing gesture in order to receive his medications.

  f. Making sexual gestures and sounds to Mr. Webb while he was in his cell.

39. The force used by Defendant Gilgour, Defendant Woody, and Defendant DeWeese while sexually abusing Mr. Webb while in custody was harmful, unwanted, and excessive.

40. Defendants Gilgour, Woody, and DeWeese's actions, sexual in nature, were unreasonable, unjustified, and offensive to human dignity, and were done with deliberate indifference to the rights and safety of Mr. Webb.

41. The conduct of Defendants Gilgour, Woody, and DeWeese were willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Webb, and therefore warrants the imposition of exemplary and punitive damages.

42. As further direct and proximate result of Defendant Gilgour, Defendant Woody, and Defendant DeWeese's sexual abuse and indifference and/or reckless disregard for Mr. Webb's constitutional rights, Mr. Webb sustained significant damages.

### COUNT 2 – VIOLATION OF 42 U.S.C. § 1983:
### FAILURE TO PROTECT
### (Defendants Jordan, Lakey, Lindsey, Montemayor, and Webb)

43. Mr. Webb hereby incorporates by reference allegations of Paragraphs 1 through 42 above as if set forth fully herein.

44. Defendants Jordan, Lakey, Lindsey, Montemayor, and Webb were aware of the sexual abuse and harassment Mr. Webb was enduring from other Defendants.

45. Mr. Webb submitted various grievances that detailed Defendants' sexual abuse and sexual harassment. Defendants Jordan, Lakey, Lindsey, Montemayor, and Webb personally reviewed or otherwise had knowledge of Mr. Webb's grievances.

46. Defendants Jordan, Lakey, Lindsey, Montemayor, and Webb did not take any action to protect Mr. Webb from the Defendants who were sexually abusing and harassing him.

47. Defendants continued to assign Defendants Gilgour, Woody, and DeWeese to Mr. Webb's housing unit, despite the fact that these Defendants were sexually abusing and harassing Mr. Webb.

48. The sexual abuse by Defendant Gilgour, Defendant Woody, and Defendant DeWeese placed Mr. Webb in risk of serious harm.

49. The conduct of Defendants Jordan, Lakey, Lindsey, Montemayor, and Webb was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Webb, and therefore warrants the imposition of exemplary and punitive damages.

50. As further direct and proximate result of Defendants Jordan, Lakey, Lindsey, Montemayor, and Webb sexual abuse and indifference and/or reckless disregard for Mr. Webb's constitutional rights, Mr. Webb sustained significant damages

### COUNT 3 – VIOLATION OF 42 U.S.C. § 1983: RETALIATION CLAIM
### (Defendants Gilgour, Woody, Jordan, and Lakey)

51. Mr. Webb hereby incorporates by reference allegations of Paragraphs 1 through 50 above as if set forth fully herein.

52. Defendants Gilgour, Woody, Jordan, and Lakey had direct knowledge of Mr. Webb's grievances and complaints that he had been sexually abused and harassed by Defendants Gilgour, Woody, and DeWeese.

53. Defendants Gilgour, Woody, Jordan, and Lakey threatened and/or retaliated against Mr. Webb, which included, but was not limited to the following acts:

    a. Creating false conduct violations against Mr. Webb to deter him from filing future grievances;

  b. Threatening Mr. Webb to "stop going back to the office with this [expletive] or we are going to trash your cell!" and "If I hear anymore about this I'm going to write you so many violations you'll go to level five!"

  c. Threatening to break Mr. Webb's possessions during a cell search;

  d. Threating to deny Mr. Webb's parole;

  e. Threatening Mr. Webb while fondling his genitals during a pat search;

  f. Threatening Mr. Webb for reporting sexual harassment and/or abuse through the PREA hotline;

  g. Threatening Mr. Webb, "I'm sure we'll find something of yours broken, or torn, to write you up for when we do. You know accidents happen during searches."

  h. Threatening Mr. Webb that if "you called PREA on me you are going to be sorry you did";

  i. Threatening Mr. Webb while administering medications.

  54. Defendants' threats were intended to prevent and dissuade Mr. Webb from continuing to report Defendants' sexual abuse and harassment.

  55. Defendants Gilgour, Woody, Jordan, and Lakey denied Mr. Webb the right to petition the government for redress of these grievances in violation of the First Amendment.

  56. The conduct of Defendants Gilgour, Woody, Jordan, and Lakey was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Webb, and therefore warrants the imposition of exemplary and punitive damages.

  57. As further direct and proximate result of Defendants Gilgour, Woody, Jordan, and Lakey sexual abuse and indifference and/or reckless disregard for Mr. Webb's constitutional rights, Mr. Webb sustained significant damages.

**WHEREFORE**, Mr. Webb prays for judgment on Count 1, Count 2, and Count 3 of actual damages, for punitive damages sufficient and necessary to punish Defendants and to deter others from like conduct; for attorney's fees, costs and disbursements as allowed under 42 U.S.C. § 1988; and for such other and further relief as the Court deems just and equitable.

Dated: March 7, 2022                                  Respectfully submitted by,

                                                                  /s/ Bryan T. Pratt
                                                           Bryan T. Pratt, MO Bar No. 48798
                                                           Brice Nengsu Kenfack, Mo Bar No. 69508
                                                           Connor W. Smith, Mo Bar No. 72132
                                                           SHOOK, HARDY & BACON L.L.P.
                                                           2555 Grand Blvd.
                                                           Kansas City, Missouri 64108
                                                           Telephone: 816.474.6550
                                                           Facsimile: 816.421.5547
                                                           bpratt@shb.com
                                                           bkenfack@shb.com
                                                           cwsmith@shb.com

                                                           **Attorneys for Mr. Webb Antonio Lamont Webb**

# CERTIFICATE OF SERVICE

  I hereby certify that on March 7, 2022 a true and correct copy for the above and foregoing was served by electronic filing with the Clerk of the Court in the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Matthew W. Vineyard, MO Bar No. 68814
MISSOURI ATTORNEY GENERAL'S OFFICE-JC
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102
Telephone: 573-751-3424
Facsimile: 573-751-9456
Matthew.Vineyard@ago.mo.gov

***Attorneys for Defendants and MDOC***

                */s/ Bryan T. Pratt*