## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

ANTONIO LAMONT WEBB,       )
                                     )
           Plaintiff,           )
                                     )
        v.                    )          No. 5:18-cv-06061-DGK
                                     )
SHERIE KORNEMAN, et al.,       )
                                     )
                                     )
          Defendants.        )

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This lawsuit is brought under 42 U.S.C. § 1983 by former prisoner Antonio Lamont Webb ("Plaintiff"). He is suing employees of the Western Missouri Correctional Center ("WMCC") for sexual harassment which allegedly occurred during his incarceration there. Plaintiff brings three claims: Cruel and Unusual Punishment in the form of Sexual Harassment and Abuse (Count I); Failure to Protect (Count II); and Retaliation (Count III). Eight Defendants remain in this case: John DeWeese; David Gilgour; Catrina Woody; Elizabeth Jordan; Lori Lakey; Andrew Webb; Latisha Montemayor; and Betty Lindsey (collectively "Defendants").

Now before the Court is Defendants' Motion for Summary Judgment and, in the alternative, for Partial Summary Judgment. ECF No. 158. Defendants allege they are entitled to summary judgment both on the merits of each claim and on qualified immunity. For the reasons set forth below, Defendants' motion is GRANTED.

### Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

## Factual Background

To resolve the motion, the Court must first determine the material undisputed facts. The Court has limited the facts to those that are undisputed and material to the pending summary judgment motion. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has excluded legal conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). However, the Court has included inferences from undisputed material facts and facts the opposing party has not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

The only admissible evidence Plaintiff has to controvert Defendants' statement of material facts (ECF No. 159) and to support his own proposed statement of material facts (ECF No. 164 at 37–38) is a two-page "declaration" (ECF No. 164-1) that is vague and conclusory. Assuming it is

2

admissible,[1] the declaration provides almost no dates, times, or concrete details about the key events in this litigation. Ironically, even when the declaration claims to offer particulars, it does not. For example, it states "Specifically, John DeWeese made inappropriate sexual comments, gestures, and sounds to me while I went through the medication line." Decl. at 1. But these are not specifics. When did this conduct happen? What exactly did he say and do? Plaintiff's declaration is so vague—stating things like "Plaintiff will testify at trial repeated interactions with his harassers made him paranoid and constant fear [sic] of further abuse," Decl. at 2—that its evidentiary value is extremely limited. While such generic allegations may have been sufficient to survive a motion to dismiss, they are insufficient at the summary judgment stage.

Of course, Plaintiff's opposition also cites documents attached to the numerous written grievances he filed while incarcerated.[2] But the Court cannot consider the statements Plaintiff made in these documents for the truth of the matter asserted because they are inadmissible hearsay. Even if admissible, the Court would not consider them because Plaintiff has failed to cite to a particular part of these documents as required by Rule 56(c)(1)(A). *See, e.g.*, Pl.'s Stat. of Mat. Facts at 37 (referencing an eighty-page exhibit with no pinpoint citation to, or highlighting of, the relevant portion of the document). The Court declines to do Plaintiff's job for him and scour his exhibits for information helpful to his case. *See Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) (citing cases); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

---

[1] The declaration is arguably not even admissible under Rule 56(c)(4) as a sworn declaration: it is not an affidavit and does not comply with 28 U.S.C. § 1746, which allows a written declaration subscribed in proper form (that is, made "under penalty of perjury under the laws of the United States of America") to substitute for an affidavit.

[2] From April 7, 2010, to October 16, 2019, Plaintiff filed 103 grievances. In 2017, Plaintiff filed 20 grievances. In 2018, Plaintiff filed 13 grievances. From January 2, 2019, October 16, 2019, Plaintiff filed 16 grievances. As for Prison Rape Elimination Act ("PREA") hot-line calls, from February 21, 2017, to September 16, 2017, Plaintiff made 23 PREA hot-line calls. From February 13, 2018, to September 26, 2018, Plaintiff made 12 PREA hot-line calls.

Finally, the Court cannot consider Plaintiff's claim that as a result of Defendants' actions, he was diagnosed with Post-Traumatic Stress Disorder ("PTSD"). Decl. at 2. This claim requires expert medical evidence to establish. *See Lybarger v. Potter*, No. 07-0731-CV-W-DGK, 2009 WL 10672444, at *1 (W.D. Mo. Aug. 3, 2009) (noting the defendant's expert could testify about Plaintiff's alleged PTSD because he was a licensed psychologist with six years of clinical experience diagnosing and treating individuals with PTSD). But there is zero medical evidence on the record here, much less evidence establishing a causal link between Defendants' actions and Plaintiff's alleged PTSD.

With these limitations in mind, the Court finds the undisputed material facts to be as follows:

Plaintiff was incarcerated at the WMCC in Cameron, Missouri, from February 25, 2014, to January 22, 2019. During that time, DeWeese, Gilgour, and Woody held the position of Correctional Officer I ("COI"). Jordan was ranked higher as a Correctional Officer III ("COIII"). Lakey was Deputy Warden from 2008 to March 2016 and then Prison Rape Elimination Act ("PREA") Site Coordinator from March 2016 to November 30, 2017. Webb was the Functional Unit Manager. Montemayor and Lindsey were Case Managers.

As best the Court can tell, the conduct in question occurred between February 2017 and March 2018.

**Officer DeWeese**

Plaintiff alleges, Officer DeWeese made unspecified inappropriate sexual comments, gestures, and sounds to him as he went through the medication line on an unknown date and time.

Officer DeWeese denies all wrongdoing. As a COI, Officer DeWeese's general duties included safety and security, conducting count of inmates, and ensuring inmates were taken care

4

of.  Officer DeWeese was often assigned as the Medical/Utility Officer in the pill line, where his duties included visually inspecting the inside of inmates' mouths to ensure they were not hiding medication under their tongue or in their cheek.  To do this, he verbally instructed inmates to open their mouth wide and touch the tip of their tongue to the top of their mouth.  Officer DeWeese demonstrated this action to inmates when necessary.

Officer DeWeese received training in the WMCC's policies and procedures, but he had no decision-making authority concerning them.  In handling all matters related to Plaintiff, he followed established policy.  Prior to this case, Officer DeWeese never had a complaint lodged against him for sexual harassment, sexual abuse, or assault.

### Officer Gilgour

Plaintiff alleges Officer Gilgour groped him, including grabbing his genitals and other private parts of his body, sexually harassed him, and repeatedly made sexual comments to him for an extended period while he was incarcerated at the WMCC.  Plaintiff has not specified what the alleged harassment was (aside from groping), what the alleged comments were, how often they occurred, or over what time frame.

Officer Gilgour denies any wrongdoing.  As a COI, his duties included conducting wing tours, cell searches, and ensuring safety and security.  Officer Gilgour recalls pat searching Plaintiff and conducting three or four searches of his cell.  According to his training, pat searches must be conducted during wing tours and the food hall to avoid contraband in the areas but can be conducted at any time necessary.  During wing tours, officers go door to door and look inside the cells, conducting a well-being check for each offender.  Each cell must be searched monthly, as well as anytime that is deemed necessary.

5

**Officer Woody**

Plaintiff alleges Officer Woody also inappropriately groped him, including grabbing his genitals, buttocks, and other parts of his body, and made inappropriate sexual comments to him. Again, Plaintiff provides no details for these allegations.

Officer Woody denies the allegations. As a CIO, he was charged with maintaining safety, performing cell searches and pat searches, conducting wing tours, and watching the inmates. This included pat searching Plaintiff and conducting wing tours in which she had to look into Plaintiff's cell window when he might be unclothed.

As a result of Officers DeWeese, Gilgour, and Woody's harassment, Plaintiff alleges he was left feeling stressed, paranoid, humiliated, and in constant fear of further abuse.

Plaintiff filed complaints against these officers under WMCC's grievance policies and procedures, including its policies related to the PREA. Plaintiff alleges the remaining Defendants—Jordan, Lakey, Lindsey, Montemayor, and Webb—knew of Officers DeWeese, Gilgour, and Woody's conduct, but refused to do anything about it.

**Deputy Warden Lakey and Unit Manager Webb**

Deputy Warden Lakey was responsible for ensuring compliance with the PREA standards which included offender education about the department's zero-tolerance policy and how to file PREA complaints. As such, Deputy Warden Lakey, along with Unit Manager Webb, met with Plaintiff on some unknown date in the receiving and orientation area of the prison to discuss Plaintiff's complaints and hear his view on the matter. During the meeting, Deputy Warden Lakey explained to Plaintiff the most effective way to use PREA, believing Plaintiff had submitted several PREA allegations that did not meet the criteria of a PREA allegation because the situations

involved staff members who were conducting normal security functions incidental to routine cell checks.

Plaintiff alleges that during the meeting Deputy Warden Lakey threatened to make his grievances disappear and/or tamper with his upcoming parole if he did not stop filing PREA grievances. This threat left Plaintiff under constant stress that he would lose his parole and his chance for early release.

With respect to Unit Manager Webb, although the Fourth Amended Complaint makes fairly detailed allegations against him, there is no admissible evidence on the record implicating him in any wrongdoing. The evidence on the record is that after a grievance was filed, Unit Manager Webb reviewed video surveillance, interviewed staff members, and coordinated with administration to collect staff members' written statements about the event. Unit Manager Webb supervised the grievance officers to ensure policy was followed; however, he never supervised their investigation. He investigated several of Plaintiff's complaints and reviewed the video for a time-period when Plaintiff alleged Officer Gilgour engaged in voyeurism by looking into his cell. In the video, he saw Officer Gilgour performing his normal duties pursuant to prison policy: Plaintiff had covered his entire window, which was not allowed, and Officer Gilgour instructed him to remove it so he could conduct a wing tour.

During Plaintiff's meeting with Deputy Warden Lakey and Unit Manager Webb, Webb never referred to Plaintiff's parole. In fact, he did not know Plaintiff had an upcoming parole meeting at that time.

**Officer Jordan**

With respect to Officer Jordan, although the Fourth Amended Complaint makes some fairly detailed allegations against her, Plaintiff has placed no admissible evidence on the record concerning her actions.

As a COIII, Officer Jordan supervised the COII and COI level employees. As such, she rarely conducted pat searches herself, but instead instructed her subordinates to perform them. She does not recall ever instructing a subordinate to conduct a thorough pat search on Plaintiff, nor does she recall pat searching Plaintiff herself, as Plaintiff alleges.

Her job duties also included taking inmates' PREA complaint statements and investigating the PREA claim. The process of investigating the PREA claim at the COIII level involves taking the inmate's statement, separating the offender from the individual that is accused, and sending the statement up the chain of command. Officer Jordan denies all allegations and was unaware of anyone retaliating against Plaintiff.

**Case Manager Montemayor**

As a Case Manager, Montemayor's duties included reviewing files, helping inmates manage their cases, and receiving and investigating inmates' Informal Resolution Requests. She was never involved in PREA complaints because they were automatically sent above her in the chain of command.

Plaintiff alleges he reported Officers DeWeese, Gilgour, and Woody's conduct to Case Manager Montemayor but she refused to do anything.

8

**Case Manager Lindsey**

As a Case Manager, Lindsey's duties included logging complaints in the grievance system and gathering evidence. Although the Fourth Amended Complaint makes some fairly detailed allegations against her, Plaintiff has placed no admissible evidence on the record concerning her.

**Applicable WMCC Policies**

The following WMCC policies are relevant to the facts of this case:

**General Population Housing Unit/Yard Rules**. *See* Df.s' Stat. of Mat. Facts, Ex. K-1.

1.    Counts:
   - a.    Custody counts are at 5:00 a.m., 7:30 a.m., 10:30 a.m., 4:30 p.m., and 10:00 p.m.
   - b.    During the counts offenders must be standing or sitting in their assigned cell and be physically visible to the counting officer(s). . . .
   - x.    The view through cell doors/windows will not be obstructed at any time.

                         * * *

15.    . . . Nothing will be attached to or hung from . . . windows, [or] doors . . . . Windows will not be covered at any time. Window ledges will also be kept neat and uncluttered.

**Searches**. *See id.*, Ex. K-2.

I.    **PURPOSE:**  Searches are a necessary security tool to prevent escapes and the introduction of weapons or other contraband into facilities . . . .

II.    **DEFINITIONS:**

                         * * *

    S.    **Thorough Pat Search:** Running of the hands over the clothed body of an offender[;] . . . examination of pockets, shoes, mouth, hair and all articles found in the person's possession at the time of the search to determine whether the individual possesses contraband.

                         * * *

III.    **PROCEDURES:**

                         * * *

    B.    INSTITUTIONAL SEARCHES:

1. Continuing, unannounced and irregularly timed searches will be made of all . . . cells . . . .

&ast; &ast; &ast;

2. The chief administrative officer . . . will ensure that all areas of the facility are searched as established by standard operating procedures . . . .

&ast; &ast; &ast;

• The following areas will be searched at least once per month:

&ast; &ast; &ast;

- unannounced, random searches of all occupied offender rooms in each housing unit/TCU.
    - For all offenders present in the room/cell, a thorough pat search should be conducted prior to exiting the area/cell.

&ast; &ast; &ast;

C. OFFENDER SEARCHES:

&ast; &ast; &ast;

3. THOROUGH PAT SEARCHES: Thorough pat searches will be conducted by institution staff members routinely at any time or place using the techniques outlined in the department approved training curriculum.

   a. Male offender Thorough Pat Search: Thorough pat searches of male offenders can be conducted by a staff person of any gender.

&ast; &ast; &ast;

4. QUICK WEAPONS SEARCH:

• Random or as warranted quick weapons searches will be conducted on offenders when:

- exiting food services during meal periods;

&ast; &ast; &ast;

- exiting and entering housing units;

&ast; &ast; &ast;

**Medical Utility Officer**. *See id.*, Ex. K-3.

&ast; &ast; &ast;

1. During the pill line, the officer will observe the offenders to ensure they swallow the medication given.

   a. The officer will visually inspect the inside of the offender's mouth to ensure the offender is not hiding the medication under their tongue or in their cheek.

10

**Offender Sexual Abuse and Harassment**. *See id.*, Ex. L. (emphasis added).

I.  **Purpose**: This procedure establishes the department's zero tolerance for offender sexual abuse and harassment and establishes strategies and responses to reduce and prevent offender sexual abuse and harassment.

* * *

II.  **Definitions**:

* * *

    O.  **Offender Sexual Abuse**: Includes . . . sexual abuse of an offender by staff member.

* * *

        2.  Staff Member on Offender Sexual Abuse: Sexual abuse of an offender by a staff member, including any of the following acts, with or without consent of the offender:

* * *

           e.  Any . . . intentional contact, either directly or through the clothing, of or with, the genitalia, . . . or the buttocks, that is *unrelated to official duties* . . . .

* * *

           h.  Voyeurism by a staff member which is an invasion of privacy of an offender, for reasons *unrelated to the staff members' official duties*, such as peering at an offender who is using a toilet in his cell to perform bodily functions; . . .

* * *

    Q.  **Offender Sexual Harassment**:

* * *

        2.  Repeated verbal comments or gestures of a sexual nature to an offender . . . by a staff member . . . including . . . sexually suggestive . . . comments about body or clothing, or obscene language or gestures.

* * *

III.  **PROCEDURES**:

* * *

    E.  CROSS-GENDER VIEWING AND SEARCHING

* * *

        2.  Offenders shall be allowed to shower [and] perform bodily functions . . . without . . . staff members of the opposite gender viewing their . . . buttocks, or genitalia, *except . . . when such viewing is incidental to routine cell checks* . . . .

11

a. Staff members of the opposite gender shall announce their presence prior to entering an offenders housing unit. If an opposite gendered staff member is assigned to the housing unit, the announcement shall be made at the beginning of the shift. . . .

**Coordinated Response to Offender Sexual Abuse Manual**. *See id.*, Ex. M.

\* \* \*

<u>Exceptions [to] [a]llegations reported during official duties such as a pat search:</u>

\* \* \*

•   PREA allegations made as a result of a security search will ordinarily not be considered a PREA Event.

\* \* \*

During his incarceration, Plaintiff violated WMCC policies on several occasions before the alleged conduct in this case. None of these violations are material to the pending motion.

## Discussion

The Fourth Amended Complaint alleges three separate Section 1983 violations: Cruel and Unusual Punishment in the form of Sexual Harassment and Abuse against Defendants Gilgour, Woody, and DeWeese (Count I); Failure to Protect against Defendants Jordan, Lakey, Lindsey, Montemayor, and Webb (Count II); and Retaliation against Defendants Gilgour, Woody, Jordan, and Lakey (Count III). All claims are brought against Defendants in their individual capacity.

Defendants move for summary judgment on each, arguing Plaintiff has failed to establish all the elements of each claim.[3] Alternatively, Defendants argue they are entitled to partial summary judgment on damages since Plaintiff failed to allege physical injury.[4] Finally,

---

[3] Specifically, Defendants argue the following: Plaintiff has not established actual injury to support a claim for cruel and unusual punishment (Count I); Defendants were unaware of any facts from which they could infer the existence of a substantial risk of harm to support a claim for failure to protect (Count II); and Defendants did not engage in conduct that would chill a person of ordinary firmness, nor were their actions motivated by a protected activity to support a claim for retaliation (Count III).

[4] Because the Court finds summary judgment is appropriate on all counts, it declines to address Defendants' alternate argument for partial summary judgment. *See* Df.s' Sugg. in Supp. of Summ. J. at 18, ECF No. 160.

Defendants are entitled to qualified immunity on all three counts since there was no violation of a clearly established constitutional right.

Plaintiff responds that a genuine dispute of material facts exists, and he suffered sufficient injuries to sustain his claims. As for qualified immunity, Plaintiff argues Defendants waived the defense, but regardless, the defense is inapplicable.

Plaintiff's arguments are unavailing. Defendants are entitled to summary judgment.

## I.     All Defendants are entitled to summary judgment on the merits.

### A.     Defendants DeWeese, Gilgour, and Woody are entitled to summary judgment on Plaintiff's cruel and unusual punishment claim (Count I).

Plaintiff brings claims under the Eighth Amendment for cruel and unusual punishment in the form of sexual harassment or abuse against Defendants DeWeese, Gilgour, and Woody.

To establish an Eighth Amendment claim of sexual harassment, Plaintiff must "prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997). To prevail, "some actual injury must be shown[,] and the extent of the injury and pain suffered are relevant concerns in determining whether the conduct amounts to cruel and unusual punishment." *Berryhill v. Schriro*, 137 F.3d 1073, 1077–78 (8th Cir. 1998) (holding inmate failed to show actual injury after prison workers grabbed his buttocks because inmate never sought medical attention for psychological harm, no other inmates attempted to sexually assault him afterwards, and no medical evidence suggested the incident caused his shortness of breath).

Similarly, the Eighth Circuit has held that verbal sexual harassment, "absent contact or touching, does not constitute unnecessary and wanton infliction of pain" and is insufficient to establish an Eighth Amendment violation. *Howard v. Everett*, 208 F.3d 218, 2000 WL 268493, at

13

*1 (8th Cir. 2000) (unpublished op.); *see Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)

(holding that mere harassment, threats, or verbal abuse do not give rise to a constitutional claim).

Rather, "only severe or repetitive sexual abuse [] rises to the level of an Eighth Amendment

violation." *Maxwell v. Talley*, No. 4:07-CV-00669-SWW/BD, 2010 WL 3270757, at *2 (E.D.

Ark. July 12, 2010), *report and recommendation adopted*, 2010 WL 3270758 (E.D. Ark. Aug. 16,

2010), *aff'd as modified*, 419 F. App'x 697 (8th Cir. 2011) (unpublished op.); *see, e.g.*, *Berry v.

Oswalt*, 143 F.3d 1127, 1131–33 (8th Cir. 1998) (finding sufficient evidence to support an Eighth

Amendment violation where prison officer attempted to perform non-routine pat searches on

inmate, propositioned the inmate for sex, intruded upon her when she was not fully dressed, and

repeatedly made sexual comments to her); *Berryhill*, 137 F.3d at 1076 (quoting *Hudson v.

McMillian*, 503 U.S. 1, 9 (1992)) ("We bear in mind that not 'every malevolent touch by a prison

guard [or civilian prison worker] gives rise to a federal cause of action.'").[5]

### 1.  Officer Gilgour did not violate Plaintiff's Eighth Amendment rights.

Accepting Plaintiff's conclusory allegations as true, Officer Gilgour groped Plaintiff,

grabbing his genitals and other private parts of his body, sexually harassed him, and repeatedly

made sexual comments to him for an extended period while he was incarcerated at the WMCC.

Plaintiff has not specified what the alleged harassment was, what the alleged comments were, how

often they occurred, or over what time frame.

This claim fails against Officer Gilgour.  As a threshold matter, these undated general

---

[5] Other circuits have similarly held that isolated incidents of inappropriate conduct by prison officials does not constitute a constitutional violation.  *See, e.g.*, *Obiegbu v. Werlinger*, 581 F. App'x 119, 121 (3d Cir. 2014) (unpublished op.) (finding no Eighth Amendment violation where correctional officer grabbed inmate's genitals through his clothing twice during a pat search); *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) (finding no Eighth Amendment violation where prison guard verbally sexually harassed inmate, grabbed his penis, and pinned him against a door with her body twice); *Rhoten v. Werholtz*, 243 Fed. App'x. 364, 366–67 (10th Cir. 2007) (unpublished op.) (finding no Eighth Amendment violation where a correctional officer slammed inmate against the wall, squeezed his nipples hard, squeezed his buttocks, and pulled on his testicles while performing a pat search).

allegations are not enough to survive summary judgment. *See Young Am.'s Found. v. Kaler*, 14 F.4th 879, 888 (8th Cir. 2021) (internal quotations omitted) ("[A]t the summary judgment stage the plaintiff must set forth by affidavit or other evidence *specific* facts to meet its burden.") (emphasis added); *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

Even if these allegations were sufficiently specific, they do not rise to the level of an Eighth Amendment violation. What Plaintiff has alleged—groping without injury or pain—does not constitute an Eighth Amendment violation. *See Berryhill*, 137 F.3d at 1076; *Rhoten*, 243 Fed. App'x. at 366–67 (finding no Eighth Amendment violation where a correctional officer slammed inmate against the wall, squeezed his nipples hard, squeezed his buttocks, and pulled on his testicles while performing a pat search); *Tarpley v. Stepps*, No. 405-CV-573-CAS, 2007 WL 844826, at *6 (E.D. Mo. Mar. 19, 2007) (granting summary judgment despite guard briefly squeezing prisoner's buttocks twice during a pat search while leaving the cafeteria).

Indeed, the allegations in this case are far less humiliating, degrading, or overtly sexual than the cases Plaintiff cites in support, which notably do not allege Eighth Amendment violations. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 962–63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about inmate's penis and buttocks, and rubbed his buttocks with nightstick during two strip searches were sufficient to withstand motion for summary judgment on inmate's Fourth Amendment claims); *Watson v. Jones*, 980 F.2d 1165, 1165–66 (8th Cir. 1992) (allegations that prison guard conducted almost daily routine pat searches for two months that consisted of tickling and "a deliberate examination of the genital, anus, lower stomach and thigh areas" were sufficient to withstand summary judgment motion in inmates' suit claiming that sexually harassing and physically intrusive pat searches violated his Fourth Amendment rights).

15

Similarly, Plaintiff's vague claims of "sexual harassment" and "sexual comments" do not rise to an actionable level because there is no indication they were severe or accompanied by contact. *See Martin*, 780 F.2d at 1338; *Howard*, 2000 WL 268493, at *1; *Maxwell*, 2010 WL 3270757, at *2.

Accordingly, Officer Gilgour is entitled to summary judgment on Count I.

### 2. Officer Woody did not violate Plaintiff's Eighth Amendment rights.

The allegations against Officer Woody are nearly identical to those against Officer Gilgour, and the Court reiterates its analysis above. While inappropriate, groping and fondling Plaintiff during a pat search also does not amount to a constitutional violation. Plaintiff's claims are distinguishable from *Seltzer-Bey* and *Watson*, and so Officer Woody is entitled to summary judgment on Count I.

### 3. Officer DeWeese did not violate Plaintiff's Eighth Amendment rights.

Here, Officer DeWeese allegedly made unspecified inappropriate sexual comments, gestures, and sounds to Plaintiff as he went through the medication line. Even assuming that the purpose of such conduct was not to ensure Plaintiff swallowed his medication, Plaintiff has failed to establish how this amounts to an Eighth Amendment violation. Accordingly, Officer DeWeese is entitled to summary judgment on Count I.

### B. Defendants Jordan, Lakey, Webb, Montemayor, and Lindsey are entitled to summary judgment on Plaintiff's failure to protect claim (Count II).

Plaintiff brings Eighth Amendment claims for failure to protect against Defendants Jordan, Lakey, Webb, Montemayor, and Lindsey.

To prevail on an Eighth Amendment failure to protect claim, Plaintiff "must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). This

16

is a two-part test. First, Plaintiff must "establish that the alleged constitutional deprivation was 'objectively, sufficiently serious,' which requires a showing that the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). Under the second prong, Plaintiff must show that Defendant was "deliberately indifferent" to that substantial risk of serious harm, i.e., Defendant "actually [knew] of the substantial risk and fail[ed] to respond reasonably to it." *Id.* at 873. Acting *reasonably* is key. *See Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (internal quotations omitted) ("The duty to protect requires only that prison officials take reasonable measures to abate substantial risks of serious harm, of which the officials are aware."). Acting with mere negligence, on the other hand, is not actionable under Section 1983. *See Newman v. Holmes*, 122 F.3d 650, 653 (8th Cir. 1997).

Even if the Court finds Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, Plaintiff has failed to show Defendants were deliberately indifferent to such. Plaintiff argues Defendants "had a sufficiently culpable state of mind because they were aware [] Defendants Gilgour and Woody repeatedly sexually harassed [him], yet they did nothing to protect [him]." Pl.'s Sugg. in Opp'n of Summ. J. at 10–11, ECF No. 163. Plaintiff does not elaborate, nor does he cite controlling caselaw, or any caselaw at all for that matter, to support his argument. He largely fails to place admissible evidence on the record concerning Defendants Jordan, Webb, Montemayor, and Lindsey's actions, much less that they actually knew of a substantial risk and failed to respond reasonably. And again, "a district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990)).

The same can be said for Deputy Warden Lakey. Taking Plaintiff's conclusory allegations as true, Deputy Warden Lakey met with Plaintiff on some unknown date in the receiving and orientation area of the prison to discuss Plaintiff's complaints and to educate him on the most effective way to use PREA. He also threatened to make Plaintiff's grievances disappear and/or tamper with his upcoming parole if he did not stop filing PREA grievances. Nothing on the record demonstrates he actually knew of a substantial risk to Plaintiff and failed to respond reasonably.

Defendants Jordan, Lakey, Webb, Montemayor, and Lindsey are entitled to summary judgment on Count II.

**C.      Defendants Gilgour, Woody, Jordan, and Lakey are entitled to summary judgment on Plaintiff's retaliation claim (Count III).**

Plaintiff brings retaliation claims against Defendants Gilgour, Woody, Jordan, and Lakey.

To state a claim of retaliation under Section 1983, Plaintiff must allege that Defendants' actions against him were in retaliation for exercising his constitutional rights. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). To establish a claim of retaliation, Plaintiff must show "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). While the second prong is an objective one, "how plaintiff acted might be evidence of what a reasonable person would have done." *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003).

Importantly, "[v]erbal threats and name calling usually are not actionable under § 1983." *Compare McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (finding general harassment to try and prevent inmate from filing grievances was not a constitutional violation), *with Burton v. Livingston*, 791 F.2d 97, 99, 100–01 (8th Cir. 1986) (finding constitutional violation where guard

18

"terrorized . . . [prisoner] with threats of death").  So long as an inmate is not denied access to the grievance procedure, there is no constitutional violation.  *See McDowell*, 990 F.2d at 434; *Martin*, 780 F.2d at 1339.

Here, Plaintiff satisfied the first prong, as "[t]he filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."  *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).  However, Plaintiff failed to establish the second prong.  Taking Plaintiff's allegations as true, Officers Gilgour and Woody groped and sexually harassed Plaintiff, and made sexual comments to him (the contents of which are unknown) over an unspecific timeframe; and Deputy Warden Lakey threatened to make Plaintiff's grievances disappear and/or tamper with his upcoming parole if he did not stop filing PREA grievances.  There is no admissible evidence on the record concerning Officer Jordan's actions.

No evidence suggests Officers Gilgour and Woody took any adverse action against Plaintiff.  And although Deputy Warden Lakey allegedly threatened Plaintiff, his threats do not rise to an actionable level—there is no indication they were severe or effectually denied Plaintiff access to the grievance procedure.  To the contrary, Plaintiff was never denied access to the grievance procedure; he filed 49 grievances and 35 PREA complaints from 2017 to 2019.  The sheer quantity of filings demonstrates Defendants' conduct, if true, would not have chilled a person of ordinary firmness from continuing in the activity.  *See Garcia*, 348 F.3d at 729.

Thus, Defendants Gilgour, Woody, Jordan, and Lakey are entitled to summary judgment on Count III.

## II.    Defendants are entitled to qualified immunity.

Next, the Court addresses the issue of qualified immunity:  First, whether Defendants timely asserted the defense and, second, whether the defense is applicable.

**A.    Defendants timely asserted qualified immunity.**

Plaintiff argues Defendants strategically waived the defense by (1) failing to assert the defense in a motion for summary judgment by the Court's deadline to file summary judgment motions; and (2) failing to brief the issue pursuant to the Court's March 29, 2022, order.

Plaintiff cites a 2007 case from the District Court of Nebraska in support, which is not binding on this Court.  Preventing Defendants from raising qualified immunity on summary judgment would run counter to the principle that "qualified immunity is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is erroneously permitted to go to trial[.]" *Watson v. Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021) (internal quotations omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The defense is not waived at this stage of litigation and could even be reasserted later if not now.  *See, e.g.*, *Hill v. McKinley*, 311 F.3d 899, 902 (8th Cir. 2002) (holding qualified immunity defense raised in answer is not waived even when first reasserted in a post-trial motion); *Spann v. Lombardi*, 960 F.3d 1085, 1088 (8th Cir. 2020) (Defendants can still raise the qualified immunity defense at trial after failing to properly raise it in summary judgment motion); *Lampkins v Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) ("Although procedurally unusual, the qualified immunity defense is not waived or lost if a case proceeds to trial.").  Thus, the defense of qualified immunity is not waived.

**B.    Defendants are entitled to qualified immunity.**

Moving to the substance of qualified immunity, qualified immunity shields public officials from damage liability unless they "violated clearly established statutory or constitutional standards of which a reasonable person would have known." *Johnson v. Crooks*, 326 F.3d 995, 996 (8th Cir. 2003).  This includes a two-part test: "(1) whether the facts alleged, construed in the light most favorable to [Plaintiff], establish a violation of a constitutional or statutory rights, and (2) whether that right was clearly established at the time of the alleged violation such that a reasonable officer would have known his actions were unlawful." *Branch v. Gorman*, 742 F.3d 1069, 1072 (8th Cir.

20

2014).

Although Defendants initially bear the burden of proof for this affirmative defense, Plaintiff "must demonstrate that the law was clearly established." *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (quotation omitted). This is a fact-intensive inquiry that "must be undertaken in light of the *specific context* of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (emphasis added). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

As already discussed, Defendants did not violate Plaintiff's constitutional rights. That alone is enough to entitle Defendants to qualified immunity. However, even if Defendants *did* violate Plaintiff's rights, Plaintiff has failed to prove that those rights were clearly established. Plaintiff fails to cite factually similar caselaw that is binding on this Court, and the Court has found none. Instead, Plaintiff cites three cases that the Court finds unpersuasive and inapplicable to the facts at hand:

Plaintiff first cites to *Santiago v. Blair* where the Eighth Circuit found retaliation after (1) a prison official threatened to hang plaintiff from his cell and make it look like a suicide if plaintiff filed another grievance; and (2) another officer took away plaintiff's personal property, bedding, running water, and a working toilet in his cell and threatened "things are going to get worse." 707 F.3d at 992–95.

Second, the Eighth Circuit in *Walton v. Dawson* found there was enough evidence to support a failure to protect claim where a prison guard routinely left cell doors unlocked at night despite an unwritten policy requiring him to lock doors, he saw another prisoner in plaintiff's cell during his nightly walkthrough wherein plaintiff looked "scared" and "very concerned;" however,

he did nothing, and plaintiff was later violently raped by that prisoner and threatened with his life. 752 F.3d 1109, 1121–24 (8th Cir. 2014).

Lastly, the Eighth Circuit in *Sprouse v. Babcock* reiterated "[p]rison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit[.]" 870 F.2d 450, 452 (8th Cir. 1989). Plaintiff failed to allege what, if any, disciplinary actions were brought against him in retaliation, making *Sprouse* irrelevant.

Clearly, the above cases are much different than the facts at hand. Plaintiff was never raped, threatened with his life, or deprived of any amenities. Plaintiff has failed to prove that his rights were clearly established at the time of the alleged violations. Defendants are entitled to qualified immunity on all counts.

### Conclusion

Defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date: <u>February 14, 2023</u>                         <u>/s/ Greg Kays                         </u>
                                                    GREG KAYS, JUDGE
                                                    UNITED STATES DISTRICT COURT